**Wendell GONEY, Plaintiff,**

v.

**E.I. DU PONT DE NEMOURS & COMPANY, Defendant.**

**No. 5:98–CV–233–OC–10–GRJ.**

United States District Court,
M.D. Florida,
Ocala Division.

Jan. 10, 2001.

Wendell Goney, Mount Dora, FL, Pro se.

Alice G. Hector, Lance A. Harke, Sarah Becket Clasby, Emilia A. Quesada, Jeffrey Allan Sudduth, Hector & Harke, LLP, Miami, FL, Edward A. Moss, Shook, Hardy & Bacon, L.L.P., Lance A. Harke, Harke & Clasby, LLP, Miami, FL, for E.I. Dupont de Nemours & Company, a Delaware Corporation fka Wendell's Quality Foliage, defendants.

---

### ORDER

HODGES, District Judge.

The United States Magistrate Judge has issued a report (Doc. 60) recommending that the Plaintiff's Motion to Strike Counterclaim by Defendant E.I. DuPont (Doc. 52) be Denied. Neither party has filed any objections to the report and recommendation of the Magistrate Judge and the time for objecting has elapsed.

Upon this Court's independent examination of the file and upon due consideration, the report and recommendation of the Magistrate Judge (Doc. 60) is adopted, confirmed and made a part hereof, and the Plaintiff's Motion to Strike Counterclaim by Defendant E.I. DuPont is DENIED.

IT IS SO ORDERED.

---

### REPORT AND RECOMMENDATION [1]

JONES, United States Magistrate Judge.

Pending before the Court is Plaintiff's Motion to Strike Counterclaim by Defendant E.I. DuPont. (Doc. 52.) Defendant has filed its response (Doc. 55) and the motion is now ripe for disposition. For the reasons discussed below, Plaintiff's Motion to Strike Defendant's Counterclaim is due to be denied.

### I.  *Background And Facts*

The *pro se* Plaintiff initiated this action seeking to rescind a settlement agreement that he entered into in March of 1992 with Defendant E.I. DuPont De Nemours and Company ("DuPont"). The parties executed the agreement to settle a dispute arising between the parties over damages resulting from Plaintiff's use of Benlate 50 DF, a fungicide manufactured by Defendant DuPont. (Second Am. Compl., Doc. 38, at 1.) DuPont paid Plaintiff the sum of $95,126.00, and as a condition of the settlement, Plaintiff agreed to release any and all claims against Defendant. *Id.* at 2. The agreement executed between Plaintiff and Defendant released Defendant from "any and all claims, actions, causes of action, including consequential damages, demands, rights, damages, costs, losses, and any other liability ... which the [Plaintiff] ... now has or may or shall have by reason of the use of or application of DuPont Benomyl products." (Attach. B of Second Am. Complaint, Doc. 38.)

Plaintiff's Second Amended Complaint alleges that Defendant fraudulently induced him to enter into a compromise agreement by concealing its knowledge that Benlate was defective and destructive. (Doc. 38.)

---

1. Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

In response to Plaintiff's Second Amended Complaint, Defendant answered and filed a counterclaim, alleging that Plaintiff breached the terms of the agreement by filing the complaint and bringing the action for fraudulent inducement. (Doc. 51.) Specifically, Defendant seeks in its counterclaim (1) damages for breach of the settlement agreement; (2) specific performance of the release; (3) preliminary and permanent injunctive relief; (4) alternatively, reformation of the release; and (5) alternatively, restitution from Plaintiff of the original settlement amount. (Doc. 51, at 5–7.)

Plaintiff then filed his Motion to Strike Defendant's Counterclaim. Plaintiff claims that the recent ruling by the Florida Supreme Court, in *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Company,* 761 So.2d 306 (Fla.2000), unambiguously permits Plaintiff to sue for fraudulent inducement and, therefore, prohibits Defendant from asserting its counterclaims. (Doc. 52, at 1.) Based upon the Florida Supreme Court's ruling in *Mazzoni Farms,* Plaintiff argues that Defendant's Counterclaim is "frivolous, not made with reasonable care with regard to current law... and would be characterized ... as 'sham pleading,'" and should be stricken in accordance with Rule 12(f) of the Federal Rules of Civil Procedure.

Although Plaintiff's motion is labeled as a motion to strike under Rule 12(f), the court will treat it as a motion to dismiss under Rule 12(b)(6)because Plaintiff seeks to dismiss or eliminate Defendant's claims. *See, Brown v. Seebach III,* 763 F.Supp. 574, 583 (S.D.Fla.1991).

## II. *Motion To Dismiss Standard*

In passing on a motion to dismiss under Rule 12(b)(6), this Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate." *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.;* 400 F.2d 465, 471 (5th Cir.1968). A complaint or counterclaim should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See also Cook & Nichol, Inc. v. The Plimsoll Club,* 451 F.2d 505, 506 (5th Cir.1971)("a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim."). A claim is sufficiently plead "if it shows that the plaintiff is entitled to *any* relief which the Court can grant, regardless of whether it asks for the proper relief." *Dotschay v. National Mut. Ins. Co.,* 246 F.2d 221 (5th Cir.1957) (emphasis added). In addition, for purposes of deciding a motion to dismiss, all factual issues must be resolved in favor of the nonmoving party. *Burger King Corp. v. Holder,* 844 F.Supp. 1528, 1529–30 (S.D.Fla.1993).

## III. *Legal Analysis*

■ The issue to be decided by the Court is whether *Mazzoni Farms* should be interpreted to bar DuPont from relying on the release as a predicate to its counterclaims against a grower's claims for fraudulent inducement.

In *Mazzoni Farms* the plaintiffs, there, executed releases as part of a settlement with DuPont that were virtually identical to the release executed by Plaintiff in the instant case.[2] After executing the releas-

---

2. In *Mazzoni Farms,* there were seven plaintiffs suing DuPont. DuPont had executed two slightly different agreements. Three of the seven plaintiffs and DuPont executed the agreement, which the Florida Supreme Court analyzed in its decision. The relevant portion

es, the *Mazzoni Farms* plaintiffs discovered information that led them to believe that DuPont had intentionally concealed the value of the nurseries' claims in order to induce the plaintiffs to settle. Because of this alleged concealment, the plaintiffs filed suit in state court. After removal to federal court the district court dismissed the suit holding that the releases signed by the parties barred any fraudulent inducement claims. The plaintiffs then appealed to the Eleventh Circuit which certified two questions to the Florida Supreme Court. *Id.* The second question, relevant to this matter, requested the Florida Supreme Court to answer the following question: "If Florida law applies, does the release in these settlement agreements bar Plaintiffs' fraudulent inducement claims?" *Id.* at 310.

In answering the certified question in the negative the Florida Supreme Court determined that the phrase "by reason of the use or application of [Benlate]," used in the release was not sufficiently broad to bar the fraudulent inducement claims because "[t]he fraudulent inducement claim does not arise from the use or application of Benlate." *Mazzoni Farms* at 315. After the Florida Supreme Court answered the certified questions, the Eleventh Circuit reversed the district court's dismissal of plaintiffs' claims. *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Company*, 223 F.3d 1275, 1276 (11th Cir.2000).

*Mazzoni Farms*, therefore, stands for the proposition that a Benlate plaintiff's claim for fraudulent inducement may proceed and is not subject to dismissal based solely on the defense that the claims were released. *Mazzoni Farms* does not, however, stand for the proposition that the release used by DuPont and executed by Plaintiff in the instant case is unambiguous or that DuPont is barred from asserting counterclaims for reformation or recision based on the release.

Notably, the Florida Supreme Court did not address the issue of whether language in the assignment clause [3] of the release was or was not ambiguous. This provision of the release assigns to DuPont known and unknown claims of Plaintiff to the extent such claims are "in respect to" the claims that are the subject matter of the release. According to Plaintiff his claims for fraudulent inducement were unknown to him at the time of settlement. As to whether such fraudulent inducement claims are "in respect to" the claims in the release is open to question and interpretation. The term in respect to, like the terms "relate" and "related," are words commonly understood to describe a causal or logical connection. *See, Continental Cas. Co. v. Wendt*, 205 F.3d 1258, 1262–64 (11th Cir.2000). Whether the fraudulent inducement claims are causally connected to the claims that are the subject matter of the release, so as be included in the claims

---

of that release discharged DuPont, "from any and all claims, actions, causes of action, including consequential damages, demands, rights, damages, costs, losses, and any other liability or expense of whatsoever kind, which the undersigned ... now has or may or shall have by reason of the use of or application of DuPont Benomyl products." *Mazzoni Farms* 761 So.2d at 308.

The other release agreement executed by the other four plaintiffs and DuPont contained a Delaware choice of law provision. The Florida Supreme Court did not analyze

whether under Florida law that release's language barred plaintiffs' fraudulent inducement claim.

**3.** The assignment clause provides in relevant part: "In further consideration of the payment stated above, [Plaintiff] hereby assigns, sells, transfers and subrogates to DuPont, without limitation, any and all rights, claims, interests and causes of action known or unknown, for DuPont's own use and benefit, that [Plaintiff] has or may have in respect to the claims described [in the release clause]".

assigned as part of the assignment clause, is a matter subject to differing interpretations and thus, at best, the release is ambiguous in this regard. Where, as here, language in a contract is of uncertain meaning and may be fairly understood in more ways than one the contract language is deemed to be ambiguous thus permitting the court to admit parol evidence to explain the words used and how the contracting parties intended them to be interpreted. *See, Joseph U. Moore, Inc. v. Howard*, 534 So.2d 935 (Fla.Dist.Ct.App. 1988); *Royal Continental Hotels, Inc. v. Broward Vending, Inc.*, 404 So.2d 782 (Fla.Dist.Ct.App.1981). Accordingly, because the release here is ambiguous—at least as to the assignment clause—it cannot be said that Defendant has failed to state a claim in its counterclaim for damages and specific performance based on the assignment clause portion of the release.

■ Additionally, Defendant has included claims for reformation and restitution in its counterclaims. Even assuming Plaintiff was correct that Defendant could not bring counterclaims for damages and specific enforcement to enforce the release because of the Supreme Court's decision in *Mazzoni Farms*, that would not preclude Defendant from filing counterclaims for reformation or restitution.

As to the counterclaim for reformation, the Defendant has alleged that the release should be reformed to preclude Plaintiff's fraudulent inducement claims under the doctrine of mutual mistake or unilateral mistake accompanied by the knowing silence and inequitable conduct of the other. (*See,* Doc. 51, ¶ 23 at 8.) Florida law clearly provides for the equitable remedy of reformation where there is clear and convincing evidence that a mutual mistake of fact occurred. *See, e.g. Resort of Indian Spring, Inc. v. Indian Spring Country Club, Inc.*, 747 So.2d 974 (Fla.Dist.Ct.App.

1999); *Canal Insurance Co. v. Hartford Insurance Co.*, 415 So.2d 1295 (Fla.Dist.Ct. App.1982). Whether there was a mutual mistake of fact between the parties at the time of the preparation of the release is an issue that cannot be resolved on a motion to dismiss or motion to strike. Therefore, Defendant's counterclaim for reformation should not be dismissed even interpreting *Mazzoni Farms* as broadly as Plaintiff suggests.

■ Similarly, Defendant's counterclaim for restitution must stand even in the face of the Supreme Court's ruling in *Mazzoni Farms*. Generally, where a party, as here, claims that it has been fraudulently induced into entering into a contract and it has successfully proved its claim it cannot void the contract and at the same time continue to keep the benefits under the contract. *See, Royal v. Parado*, 462 So.2d 849, 856 (Fla.Dist.Ct.App.1985)("[T]he law is well settled that a condition precedent to the granting of recision is that the other party be returned to the status quo."). This means that the Plaintiff cannot seek to retain the settlement funds paid to him by Defendant and at the same time seek to avoid the release executed by him as part of the settlement. The *Mazzoni Farms* court expressly recognized this principle in its opinion by observing that "[w]e need not consider whether, in the event that the releases did bar fraudulent claims, the nurseries [Plaintiffs] would be permitted to depart from well-settled remedial principles by retaining the money, affirming the contract, and concomitantly avoiding the binding effect of the releases." 761 So.2d at 316 n. 9. Thus, *Mazzoni Farms* does not instruct that Defendant's counterclaims for restitution are barred as urged by Plaintiff. Accordingly, Plaintiff's request to strike the counterclaims brought here by DuPont must be rejected.

## IV. RECOMMENDATION

For the foregoing reasons it is, therefore, respectfully **RECOMMENDED** that Plaintiff's Motion to Strike Counterclaim by Defendant E.I. DuPont (Doc. 52) be **DENIED.**

December 12, 2000.