**In re BRIDGE INFORMATION SYSTEMS, INC., et. al., Debtors.**

**Scott Peltz, Plan Administrator, Plaintiff,**

v.

**Gulfcoast Workstation Group, Defendant.**

**Bankruptcy No. 01–41593–293.**
**Adversary No. 03–4360–293.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

May 28, 2003.

---

Gregory D. Willard, St. Louis, MO, Thomas J. Moloney, New York City, for Bridge Information Systems, Inc.

Peter Lumaghi, St. Louis, MO, United States Trustee.

Michael A. Becker, Mark L. Prager, Michael J. Small, Peter E. Pinnow, Foley and Lardner, David B. Goroff, Chicago, IL, for Unsecured Creditors Committee.

## MEMORANDUM OPINION

DAVID P. MCDONALD, Bankruptcy Judge.

This case is before the Court on Gulfcoast Workstation Group's ("Gulfcoast") motion to strike Plan Administrator's preference complaint against it (the "Preference Action") and to enforce a settlement agreement that allegedly resolved all disputes between the parties (the "Alleged Settlement Agreement").[1]

Gulfcoast commenced an adversary proceeding against Bridge Information Systems, Inc. and certain of its subsidiaries (collectively "Debtor") relating to Gulfcoast's claim against Debtor's estate. (the "2002 Adversary"). Debtor filed a counterclaim in the 2002 Adversary against Gulfcoast asserting fraud, negligent misrepresentation and unjust enrichment causes of action against Gulfcoast. The parties announced that they had settled the 2002 Adversary on November 5, 2002.

Gulfcoast first asserts in its motion that the Preference Action was a compulsory counterclaim to the 2002 Adversary under Fed.R.Civ.P. 13(a). Gulfcoast further contends that Debtor released its preference

---

1. Pursuant to Debtors' Joint Plan of Liquidation, confirmed by this Court on February 13, 2002, Plan Administrator has the exclusive authority to prosecute all claims under § 547 on behalf of the various Debtors' estates.

action in the Alleged Settlement Agreement. Gulfcoast additionally argues that the Alleged Settlement Agreement precludes Plan Administrator's preference action on claim preclusion grounds. Finally, Gulfcoast maintains that because Debtor failed to assert its preference claim at the time it objected to Gulfcoast's claim, § 502(d) prohibits Plan Administrator from prosecuting the Preference Action at this point.

The Court will deny Gulfcoast's motion for the reasons set forth below.

### JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

### FACTUAL AND PROCEDURAL BACKGROUND

Gulfcoast filed a claim against Debtor's estate in the amount of $1,052,574.88 on May 1, 2001. Gulfcoast argued that its claim was secured in the amount of $713,677.88 because it was entitled to setoff that amount under 11 U.S.C. § 553(a). The basis of Gulfcoast's setoff theory is that it is entitled to setoff the amount one of its related companies, Relational Funding, Inc. ("Relational") owed Debtor because Gulfcoast was the entity responsible for Relational's liability to Debtor.

Debtor objected to Gulfcoast's claim arguing that the claim was completely unsecured because Gulfcoast did not have right to setoff Relational's liability to it under § 553(a). Debtor also asserted that Relational owed it $713,677.88. By agreement of the parties, the Court allowed Gulfcoast to convert its claim into the 2002 Adver-

sary. Count I of the 2002 Adversary is a request for a declaration that Gulfcoast's claim is secured in the amount of $713,677.88. Gulfcoast requested in Count II of the 2002 Adversary that the Court declare that only Gulfcoast and not Relational was liable to Debtor for the $713,677.88 owed to Debtor.

Debtor field an amended counterclaim, alleging that Gulfcoast and Relational had misrepresented the Gulfcoast/Relational relationship and which entity would be responsible for remitting payment to Debtor. Specifically, Debtor asserted a fraud, negligent misrepresentation and unjust enrichment claims against Gulfcoast. Just prior to trial, the parties announced that they had settled the dispute and would submit a proposed order to the Court for approval of the settlement. The parties, however, never requested that this Court approve the Alleged Settlement Agreement under Bankr.R. 9019(a).

Plan Administrator filed the Preference Action against Gulfcoast seeking to avoid $2,117,476.10 of payments to Gulfcoast under 11 U.S.C. § 547(b) and to recover those payments from Gulfcoast under 11 U.S.C. § 550(a)(1). Gulfcoast filed this motion to strike the Preference Action on four grounds.

First, Gulfcoast asserts that the claims asserted in the Preference Action is a compulsory counterclaim under Fed. R.Civ.P. 13(a) to the 2002 Adversary. Second, Gulfcoast contends that the Alleged Settlement Agreement released all claims, including all avoidance actions under Chapter 5 of the Code, that Debtor had against Gulfcoast. The third argument in Gulfcoast's motion is that the Alleged Settlement Agreement precludes the Plan Administrator from prosecuting the Preference Action on a theory of claim preclusion. Finally, Gulfcoast argues in its motion that under 11 U.S.C. § 502(d),

Debtor's failure to assert its preference claim at the time it objected to Gulfcoast's claim prohibits Plan Administrator from asserting the Preference Action at this time.

The Court finds that the pleadings do not demonstrate that the claims in the 2002 Adversary and the Preference Action arose out of the same transaction or occurrence so that the Preference Action is a compulsory counterclaim to the 2002 Adversary. Also, even assuming *arguendo* that the parties did in fact reach an agreement as to the settlement of the 2002 Adversary, because the Court has not approved the Alleged Settlement Agreement under 11 U.S.C. § 363(b)(1) and Bankr.R. 9019(a), it is unenforceable. Finally, because there is no final order disposing of the claims contained in the 2002 Adversary, neither claim preclusion nor § 502(d) apply to bar the Preference Action. Therefore, the Court will deny Gulfcoast's motion.

## DISCUSSION

*A. The Court will Treat Gulfcoast's Motion as a Motion to Dismiss under Fed. R.Civ.P. 12(b)(6).*

Gulfcoast denominated its motion as a motion to "Strike Complaint and to Enforce Settlement Agreement." A court may strike a portion of a pleading that is "redundant, immaterial, impertinent or scandalous." Fed.R.Civ.P. 12(f). Here, however, Gulfcoast is requesting in its motion that the Court eliminate the Preference Action in its entirety. Thus, the Court will treat Gulfcoast's motion as a motion to dismiss the Preference Action under Fed.R.Civ.P. 12(b)(6). *Goney v. E.I. Du Pount de Nemours & Co.*, 144 F.Supp.2d 1286, 1288 (M.D.Fla.2001).

 Also, the Court notes that Gulfcoast attached to its motion several pieces of correspondence between its counsel and counsel for Debtor and Plan Administra-

tor. When a party attaches matters outside the pleadings to a motion to dismiss under Rule 12(b)(6), the court has the discretion of either ignoring the extra-pleading materials or consider such material and treat the motion as one for summary judgment under Rule 56. *Casazza v. Kiser*, 313 F.3d 414, 417–18 (8th Cir.2002). If the extra-pleading material would not assist the court in adjudicating a summary judgment motion, the court should ignore the material and proceed under Rule 12(b)(6). *Estate of Lennon v. Screen Creations, Ltd.*, 939 F.Supp. 287, 292 (S.D.N.Y.1996).

Here, as discussed below, even if the parties did in fact reach an agreement that settled the 2002 Adversary, such an agreement would be unenforceable because the Court had not approved the settlement under § 363(b)(1) and Bankr.R. 9019(a). Thus, the correspondence Gulfcoast attached to its motion would not assist the Court in ruling on a summary judgment motion. Therefore, the Court will not consider the extra-pleading material and will treat Gulfcoast's motion as a motion to dismiss under Rule 12(b)(6).

Because the Court will analyze Gulfcoast's motion under Rule 12(b)(6), it will accept all allegations contained in the Preference Action as true and view the facts alleged in the light most favorable to Plan Administrator. *Ethex Corp. v. First Horizon Pharm. Corp.*, 228 F.Supp.2d 1048, 1050 (E.D.Mo.2002). Also, the Court will grant Gulfcoast's motion under Rule 12(b)(6) only if it appears that there is some "insuperable" bar to relief. *Krentz v. Robertson Fire Protection Dist.*, 228 F.3d 897, 905 (8th Cir.2000).

*B. The Court Cannot Determine that the Preference Action is Compulsory Counterclaims to the 2002 Adversary.*

 Fed.R.Civ.P. 13(a), made applicable to this adversary proceeding under

Bankr.R. 7013, recites in relevant part that a party must assert as a counterclaim in a pleading any claim that it may have against the opposing party at the time if files the pleading if such claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Principles of claim preclusion prevent a party from asserting a claim against an opposing party in a later proceeding that was a compulsory counterclaim to an earlier action under Rule 13(a). *Popp Telcom v. Am. Sharecom,* 210 F.3d 928, 940–41 (8th Cir.2000).

Because Gulfcoast's compulsory counterclaim argument is premised on claim preclusion grounds, the Court will analyze it as an affirmative defense to the Preference Action. *See Rivet v. Regions Bank,* 522 U.S. 470, 476, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (observing that claim preclusion is an affirmative defense under Fed. R.Civ.P. 8(c) that must be plead and proved by the defendant). Therefore, the Court will dismiss the Preference Action under Rule 12(b)(6) as a compulsory counterclaim to the 2002 Adversary only if it appears from the face of the pleadings that it is in fact a compulsory counterclaim. *See Whisman v. Rinehart,* 119 F.3d 1303, 1309 (8th Cir.1997).

■ Two claims arise out of the same transaction or occurrence for purposes of Rule 13(a) if there is a logical relationship between them. *Tullos v. Parks,* 915 F.2d 1192, 1195 (8th Cir.1990). A court must examine the totality of the two claims, including the legal and factual similarities between them, in making the determination of whether they are sufficiently logically related so that they arise out of the same transaction or occurrence for purposes Rule 13(a). *Super Natural Distrib. v. MuscleTech Research & Dev.,* 140 F.Supp.2d 970, 976 (E.D.Wis.2001).

■ Here, the Court cannot determine from the pleadings what, if any, connection the claims in the 2002 Adversary have to those contained in the Preference Action. The only possible connection that can be gleaned from the text of the pleadings is that some of the transactions that form the basis of the 2002 Adversary may have occurred during the 90 day preference period. This connection, however, is far too tenuous to establish that the claims in the Preference Action are logically related to those in the 2002 Adversary under Rule 13(a). *See Chemtech Industr. v. Goldman Fin. Group, Inc.,* 156 F.R.D. 181, 185 (E.D.Mo.1994). (Noting that the mere fact that two claims arose under the same agreement is insufficient to establish a logical relationship between the two claims for the purpose of Rule 13(a)). Accordingly, Gulfcoast is not entitled to relief on its compulsory counterclaim argument under Rule 12(b)(6).

■ Even assuming, *arguendo,* that the Preference Action was a compulsory counterclaim to the 2002 Adversary, Gulfcoast still would not be entitled to dismissal under Rule 12(b)(6) for two reasons. First, because the Court has not issued a judgment disposing of the issues in the 2002 Adversary, Plan Administrator would be entitled under Rule 13(f) to request that the Court allow it to assert the omitted Preference Action at this point in the litigation. *Technographics, Inc. v. Mercer Corp.,* 142 F.R.D. 429, 430–31 (M.D.Pa. 1992).

Second, Bankr.R. 7013 gives bankruptcy courts the discretion to allow a debtor in possession to assert omitted compulsory counterclaims at any time, including in a new adversary proceeding, when justice so requires. Given that barring the Preference Action could potentially deprive Debtor's estate, and according the unsecured creditors, of over $2,000,000.00, Plan Ad-

ministrator would have a strong argument that justice requires that he be entitled to bring the Preference Action at this point even if it is a compulsory counterclaim to the 2002 Adversary. *See Great Am. Ins. Co. v. Bailey (In re Cutty's–Gurnee, Inc.),* 133 B.R. 969, 972 (Bankr.N.D.Ill.1991).

In conclusion, the pleadings do not indicate that the claims contained in the Preference Action are compulsory counterclaims under Rule 13(a) to those contained in the 2002 Adversary. Also, even if the Preference Action is a compulsory counterclaim, Plan Administrator may still have the right to bring the Preference Action under either Fed.R.Civ.P. 13(f) or Bankr.R. 7013. Therefore, Gulfcoast's compulsory counterclaim argument does not present an "insuperable" bar to the relief Plan Administrator requests in the Preference Action. Accordingly, Gulfcoast is not entitled to dismissal of the Preference Action under Rule 12(b)(6) on the basis that it is a compulsory counterclaim to the 2002 Adversary.

*C. The Alleged Settlement Agreement is Unenforceable.*

■ Gulfcoast also asserts in its motion that Debtor released all claims it had against Gulfcoast in the Alleged Settlement Agreement. Plan Administrator first counters by asserting that the parties did not enter into a final, binding agreement that settled the claims contained in the 2002 Adversary. Plant Administrator also argues that because the Court never approved the Alleged Settlement Agreement under Bankr.R. 9019(a), any settlement of the 2002 Adversary is unenforceable. Because the Alleged Settlement Agreement purportedly disposes of estate property in a transaction outside of Debtor's ordinary course of business, the Court agrees with Debtor's second argument.[2]

■ Section 541(a) defines the estate's property broadly to include all of the debtor's legal and equitable interest as of the petition date. Therefore, the estate's property includes any cause of action the debtor had on the petition date. *United States v. Transp. Admin. Serv.,* 260 F.3d 909, 913 (8th Cir.2001). Also, the estate's property includes preference actions that were created on the petition date. *BMC Equip. Leasing v. MCI (In re Burlington Motor Holdings, Inc.),* 231 B.R. 874, 877 (Bankr.D.Del.1999). Thus, both Debtor's counterclaim in the 2002 Adversary and the Preference Action are property of the estate under § 541(a).

■ Because the counterclaim and the Preference Action are estate property, any sale or use of that property must comply with the provisions of 11 U.S.C. § 363(b)(1). Section 363(b)(1) allows a trustee or debtor in possession to dispose of the estate's property in a transaction outside the ordinary course of the debtor's business only upon notice to creditors and approval of the bankruptcy court as provided in Bankr.R. 9019(a). *United States v. Hansen,* 262 F.3d 1217, 1238 (11th Cir. 2001) *cert. denied* 535 U.S. 1111, 122 S.Ct. 2326, 2327, 153 L.Ed.2d 158 (2002); *Myers v. Martin (In re Martin),* 91 F.3d 389, 395 n. 2 (3d Cir.1996); *In re Apex Oil, Co.,* 92 B.R. 847, 866 (Bankr.E.D.Mo.1988). If the court does not approve an agreement that disposes of the estate's property in a transaction outside of the debtor's normal course of business, the agreement is unenforceable. *In re Roth American,* 975 F.2d 949, 954 (3d Cir.1992); *Med. Malpractice Ins. Assoc. v. Hirsch (In re Lavigne),* 114 F.3d 379, 385 (2d Cir.1997); *In re Sparks,* 190 B.R. 842, 845 (Bankr.N.D.Ill.1996). Here, the Court did not approve the Al-

---

**2.** The Court makes no determination of whether the parties actually reached a meet-

ing of the minds with respect to the settlement of the 2002 Adversary.

leged Settlement Agreement. Thus, it is unenforceable under § 363(b)(1) if it is a disposition of estate property outside the ordinary course of Debtor's business.

■ The Alleged Settlement Agreement was clearly a transfer of the estate's property under § 363(b)(1). As discussed above, the counterclaim and the Preference Action are both property of the estate under § 541(a). Also, the settlement of a cause of action that belongs to the estate has the same effect upon the estate as a sale of that cause of action for purposes of § 363(b)(1). *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350 (3d Cir.1999); *In re Telesphere Communications, Inc.*, 179 B.R. 544, 552 n. 7 (Bankr.N.D.Ill.1994). Thus, any compromise of a cause of action that is property of the estate is a transfer of that asset that must comply with § 363(b)(1) to be enforceable. *Northview Motors*, 186 F.3d at 349; *Martin*, 91 F.3d at 395; *Telesphere Communications*, 179 B.R. at 552.

The Court also finds that the Alleged Settlement Agreement is outside the ordinary course of Debtor's business. Courts have utilized a two prong test to determine whether a transaction is within the debtor's ordinary course of business under § 363(b)(1). The first prong, denominated the horizontal test, examines whether the transaction is of a type that is commonly undertaken within the debtor's industry. *Roth American*, 975 F.2d at 953. The second prong, labeled the vertical test, analyzes whether interested parties would reasonably expected the particular debtor in possession to seek court approval before entering into the questioned transaction. *In re Crystal Apparel, Inc.*, 220 B.R. 816,

832 (Bankr.S.D.N.Y.1998). If the transaction does not pass either prong, it is outside the debtor's ordinary course of business under § 363(b)(1). *Id.* The Court finds that the Alleged Settlement Agreement cannot pass the vertical test.

■ Courts must apply the vertical test flexibly to effectuate the underlying policy of § 363(b)(1) which is to balance the need of the debtor in possession to operate its business without excessive court intervention with protecting creditors' reasonable expectations by allowing them to object to transactions that may deplete the estate. *See Roth American,* 975 F.2d at 954; *Crystal Apparel,* 220 B.R. at 831; *In re Johns–Manville Corp.,* 60 B.R. 612, 616 (Bankr.S.D.N.Y.1986). Thus, the factors that the court should examine in its analysis must include the size and frequency of the transaction to determine if a reasonable creditor would expect the debtor in possession to seek court approval before consummating the transaction. *Roth American,* 975 F.2d at 954; *Crystal Apparel,* 220 B.R. at 832–33; *Leslie Fay Cos.,* 168 B.R. at 304; *In re Waterfront Cos.,* 56 B.R. 31, 35 (Bankr. D.Minn.1985).

Here, the Alleged Settlement Agreement purportedly settled a $2,100,000 preference claim and significant fraud, negligent misrepresentation and unjust enrichment causes of action that belonged to the estate. Also, although it may have been customary for Debtor to settle its causes of action pre-petition, settlement of its claims do not occur frequently enough to deem them as "ordinary" for purposes of § 363(b)(1).[3] *See Northview Motors,*

---

3. Because the Alleged Settlement Agreement involved the purported settlement of causes of action that belonged to the estate, the Court need not determine whether Bankr.R. 9019(a) requires court approval for any settlement or

compromise reached by a trustee or debtor in possession. There is a rather sharp split of authority on this issue. *Compare Travelers Ins. Co. v. American AgCredit Corp. (In re Blehm Land & Cattle Co.),* 859 F.2d 137, 141

186 F.3d at 350; *Martin,* 91 F.3d at 395; *Darwin v. Beck (In re Fidelity Standard Mortgage),* 839 F.2d 1517, 1522 (11th Cir. 1988). Thus, settlement of claims held by the estate, including preference actions generally must be approved by the court under § 363(b)(1). *See Petitioning Creditors v. Braunstein,* 112 F.3d 1232, 1239 (1st Cir.1997); *Martin,* 91 F.3d at 395; *Telesphere Communications,* 179 B.R. at 552.

Based on this evidence, the Court finds that a reasonable creditor would have expected Debtor to seek court approval before entering into the Alleged Settlement Agreement. Accordingly, the Alleged Settlement Agreement is outside Debtor's ordinary course of business under § 363(b)(1). Therefore, the Alleged Settlement Agreement which purportedly disposed of the estate's interest in the causes of action against Gulfcoast is unenforceable. Thus, Gulfcoast is not entitled to dismissal of the Preference Action under Rule 12(b)(6) on the basis that Debtor had released that claim in the Alleged Settlement Agreement.

*D. Plan Administrator is not barred from Asserting the Preference Action under the Doctrine of Claim Preclusion.*

 Gulfcoast next argues that Plan Administrator cannot maintain the Preference Action because any preference action that Debtor may have against it is barred under the doctrine of claim preclusion. A party asserting that a cause of action is barred by claim preclusion must establish that there was a prior final judgment that disposed of the cause of action or a claim arising out of the same transaction or occurrence that gave rise to the cause of action. *Gurley v. Hunt,* 287 F.3d 728, 731 (8th Cir.2002).

Here, no final judgment has been entered in any suit between Debtor and Gulfcoast. Accordingly, Gulfcoast is not entitled to dismissal of the Preference Action under Rule 12(b)(6) on its claim preclusion theory.

*E. Section 502(d) does not prohibit Plan Administrator from Prosecuting the Preference Action.*

 Gulfcoast's final basis for arguing that the Court should dismiss the Preference Action is that Debtor's failure to file its preference claim against Gulfcoast at the time it objected to Gulfcoast's claim precludes Plan Administrator from pursuing the Preference Action at this time under 11 U.S.C. § 502(d). The Court disagrees with Gulfcoast's argument.

Section 502(d) requires a court to disallow a claim against the estate from a creditor "from which property is recoverable under section . . .550 or is a transferee of a transfer avoidable under section . . .547." Gulfcoast argues that because Debtor failed to file its preference action when it objected to Gulfcoast's claim, § 502(d) prohibits Plan Administrator from asserting the Preference Action at this point.

Gulfcoast cites to *In re Cambridge Indus.,* 2003 WL 1818177 (Bankr.D. Del. April 2, 2003) and *In re LaRoche Indus.,* 284 B.R. 406 (Bankr.D.Del.2002) in support of its argument. Both cases hold that when a debtor in possession files an objection to a claim under § 502(a) and the claim is then allowed after either settlement under § 502(a) or a hearing under § 502(b), § 502(d) prohibits a debtor in possession from asserting a preference ac-

(10th Cir.1988) (*per curium*) (holding that Rule 9019(a) requires court approval of any settlement reached by a trustee) *with In re Levine,* 287 B.R. 683, 690 (Bankr.E.D.Mich.

2002) (holding that Rule 9019(a) merely provides a procedural mechanism for court approval when such approval is mandated by a specific provision in the Code).

tion against the creditor. *LaRoche Indus.,* 284 B.R. at 410; *Cambridge Indus.,* 2003 WL 1818177 at *2.

The Court is somewhat skeptical of this interpretation of § 502(d). Both the *LaRoche* and *Cambridge* Courts rely heavily on *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). In *Katchen* the Supreme Court addressed the issue of whether a bankruptcy referee had the power to summarily adjudicate a preference action without a jury trial when the trustee also objected to the transferee's claim under § 57(g) of the Bankruptcy Act, the predecessor of § 502(d).[4] *Id.* at 326–27, 86 S.Ct. 467. The Supreme Court held that because the preference action must necessary be adjudicated prior to ruling on the trustee's objection to the creditor's claim under § 57(g), the adjudication of the preference claim was an integral component to the claims allowance process. *Id.* at 329–30, 86 S.Ct. 467. Thus, the referee could adjudicate both in a summary proceeding under § 2 of the Act.[5] *Id.* at 330, 86 S.Ct. 467.

The issue of whether a debtor who fails to object to a creditor's claim based on § 502(d) is precluded from later asserting a preference action against the creditor was simply not at issue in *Katchen.* The entire basis of the Supreme Court's analysis centers on the relationship between a preference action and the claims allowance process when the trustee advances an objection under § 502(d). Thus, this Court finds that *Katchen* does not support the *LaRoche* and *Cambridge* conclusion that § 502(d) extinguishes any preference against a creditor once that creditor's claim is allowed under either §§ 502(a) or 502(b).

The Court believes that the better position is that § 502(d) is in essence an affirmative defense to a creditor's claim against the estate. *In re Parker N. Am. Corp.,* 24 F.3d 1145, 1155 (9th Cir.1994); *In re Stratton Oakmont, Inc.,* 257 B.R. 644, 656 (Bankr.S.D.N.Y.2001); *In re Sierra–Cal,* 210 B.R. 168, 173 (Bankr.E.D.Cal.1997). Thus, § 502(d) is only applicable when the debtor in possession actually interposes an objection to a claim under § 502(d). *Stratton Oakmont, Inc.,* 257 B.R. at 656. Therefore, if the debtor in possession does not assert an objection to a creditor's claim under § 502(d), that section is simply not at issue and does not bar a subsequent preference action against the creditor. *See Cohen v. TIC Fin. Sys. (In re Ampace Corp.),* 279 B.R. 145, 162–63 (Bankr.D.Del. 2002).

Even if the Court were to adopt the *LaRoche* and *Cambridge* analysis of § 502(d), however, Plan Administrator could still pursue the Preference Action. Both *LaRoche* and *Cambridge* clearly hold that under its interpretation of the statute, § 502(d) acts as a bar to a debtor's preference action against the creditor only when the claim is finally allowed. *Cambridge,* 2003 WL 1818177 at *2; *LaRoche,* 284 B.R. at 408–09. Because the amount of Gulfcoast's claim has yet to be determined, even the broad interpretation of § 502(d) adopted in *Cambridge* and *LaRoche* does not act a bar to Plan Administrator's Preference Action.

## CONCLUSION

Gulfcoast's "Motion to Strike or Enforce Settlement Agreement" seeks dismissal of

---

4. Both the text and legislative history indicate that Congress did not intend to change the substance of § 57(g) of the Act in enacting § 502(d). *See LaRoche,* 284 B.R. at 408.

5. Section 2 of the Act gave the bankruptcy referee the power to allow or disallow claims against the bankruptcy estate in summary proceedings. *See Katchen,* 382 U.S. at 328, 86 S.Ct. 467.

the Preference Action and therefore the Court treats it as a motion to dismiss under Rule 12(b)(6). The text of the relevant pleadings in the 2002 Adversary and the Preference Action do not indicate that the claims presented in the two actions arose out of the same transaction or occurrence to warrant a finding that the Preference Action was a compulsory counterclaim to the 2002 Adversary under Rule 13(a). Also, because the Alleged Settlement Agreement purportedly disposed of causes of action that belonged to the estate in a transaction outside of the ordinary course of Debtor's business, it is unenforceable absent notice to interested parties and court approval under § 363(b)(1) and Bank. R. 9019(a). Further, because there is no prior judgment concerning the subject matter contained in the Preference Action, claim preclusion does not apply to bar the Preference Action. Finally, because there has been no final determination of Gulfcoast's claim against Debtor's estate, even under the *LaRoche* and *Cambridge* interpretation of § 502(d), that section does not act as bar to the Preference Action. Therefore, the Court finds that there is no "insuperable" bar to the relief requested in the Preference Action and Gulfcoast is not entitled to dismissal under Rule 12(b)(6).

An Order consistent with this Memorandum Opinion will be entered this date.