ON PETITION FOR REHEARING

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DAVID H. HILLMAN; SUZANNE
HILLMAN,

*Petitioners-Appellees,*

v.

INTERNAL REVENUE SERVICE,

*Respondent-Appellant.*

No. 00-1915

Appeal from the United States Tax Court.
(Tax Ct. No. 97-19893)

Argued: February 28, 2001

Decided: July 30, 2001

Before WILKINS and WILLIAMS, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Reversed and remanded by published opinion. Senior Judge Hamilton
wrote Parts I and II of the opinion, in which Judge Wilkins and Judge
Williams joined. Judge Williams wrote Part III of the opinion, in
which Judge Wilkins joined. Senior Judge Hamilton wrote a dissent-
ing opinion with respect to Part III.

## COUNSEL

**ARGUED:** Kenneth L. Greene, Tax Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Ste-

fan F. Tucker, VENABLE, BAETJER, HOWARD & CIVILETTI, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Paula M. Junghans, Acting Assistant Attorney General, Howard T. Perelmuter, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. David E. Sellinger, Susan Edlavitch, Damon W.D. Wright, VENABLE, BAETJER, HOWARD & CIVILETTI, L.L.P., Washington, D.C., for Appellees.

---

**OPINION**

HAMILTON, Senior Circuit Judge:

I.

In mid-July 1997, David and Suzanne Hillman (the Hillmans) received written notice from the Commissioner of the United States Internal Revenue Service (the Commissioner) that a deficiency existed in the amount of federal income taxes they had paid for taxable years 1993 and 1994. According to the notice, the Hillmans still owed the government $294,556.00 in federal income taxes for taxable year 1993 and $309,696.00 in federal income taxes for taxable year 1994. The Hillmans contested the full amounts of these deficiencies by filing a timely petition for redetermination in the United States Tax Court (the Tax Court). At the time the Hillmans filed their petition, they were residents of Bethesda, Maryland.

The parties submitted this case to the Tax Court on the following stipulated facts. During taxable year 1993, David Hillman was the sole shareholder of Southern Management Corporation (SMC), a corporation taxed under Subchapter S of the Internal Revenue Code (IRC).[1] During taxable year 1994, David Hillman owned 94.43 percent of SMC's stock.

---

[1]Shareholders of a corporation taxed under Subchapter S of the IRC may elect a passthrough taxation system, under which the corporation's profits pass through directly to its shareholders on a *pro rata* basis and are reported on each shareholder's individual federal income tax returns. 26 U.S.C. § 1366(a)(1)(A).

SMC provided real estate management services to approximately ninety entities, including joint ventures, limited partnerships, and Subchapter S corporations, which were involved in real estate rental activities.[2] At all times relevant to the issues in this appeal, David Hillman owned, either directly or indirectly, interests in each of these entities (the Passthrough Entities). The general partner of each limited partnership was either David Hillman or an upper tier partnership or Subchapter S corporation in which he owned an interest.

During taxable years 1993 and 1994, the Hillmans did not participate in the activities of the Passthrough Entities. The Hillmans did, however, participate in the activities of SMC by performing real estate management services SMC had contracted to perform for the Passthrough Entities. Indeed, David Hillman materially participated in SMC's real estate management activity in excess of 500 hours.[3]

The Hillmans reported as income the compensation paid to them for their real estate management services offered through SMC for taxable years 1993 and 1994. In computing their taxable income for 1993 and 1994, the Hillmans deducted the total amounts of the management fee expenses of the Passthrough Entities for taxable years 1993 and 1994 from the gross income they received during those years through SMC for providing the management services that gave rise to the management fee expenses. The notice of deficiency disallowed this deduction, thus resulting in the claimed tax deficiencies at issue in this appeal.

On April 18, 2000, the Tax Court entered a final decision fully in favor of the Hillmans. The Tax Court accompanied its final decision with a published opinion holding the Hillmans properly deducted the

---

[2]For purposes of federal income tax liability, joint venturers and partners are taxed under a passthrough taxation system. 26 U.S.C. § 701-04, 761(a). Thus, each joint venturer or partner is individually taxed on his distributive share of joint venture or partnership income. *Id.*

[3]During taxable years 1993 and 1994, SMC also conducted other operations in addition to real estate management services, such as recreational services, medical insurance plan underwriting, credit/collection services, and a maintenance training academy. The Hillmans did not materially participate in any of these other operations of SMC.

management fee expenses of the Passthrough Entities from their related management fee income for purposes of lowering the amounts of their taxable income for taxable years 1993 and 1994. The Commissioner filed a timely appeal. We have appellate jurisdiction pursuant to 26 U.S.C. § 7482(a)(1).

Judge Wilkins and Judge Williams join in this part of the opinion.

## II.

In this appeal, we are presented with the following question of law: May the Hillmans legally deduct their passive management fee expenses from their related nonpassive management fee income for purposes of lowering their taxable income for taxable years 1993 and 1994? We review this question of law *de novo*. *Balkissoon v. Commissioner*, 995 F.2d 525, 527 (4th Cir. 1993).

The Commissioner insists this question is easily answered by applying the plain language of IRC § 469(a),[4] which prohibits individuals, estates, trusts, closely held C corporations, and personal service corporations from deducting passive activity losses or passive activity credits from nonpassive gains in an effort to lower taxable income. 26 U.S.C. § 469(a). Specifically, IRC § 469(a) provides:

(a) Disallowance.—

(1) In General.—If for any taxable year the taxpayer is described in paragraph (2), neither—

(A) the passive activity loss, nor

(B) the passive activity credit, for the taxable year shall be allowed.

(2) Persons described.—The following are described in this paragraph:

---

[4]All references to IRC § 469 are to the version in effect during taxable years 1993 and 1994.

(A) any individual, estate, or trust,

(B) any closely held C corporation, and

(C) any personal service corporation.

*Id.* For purposes of IRC § 469, the term "passive activity" is defined as an activity involving the conduct of a trade or business in which the taxpayer does not materially participate. *Id.* § 469(c)(1). With certain exceptions not relevant here, rental activity is a passive activity. *Id.* § 469(c)(2). Also for purposes of IRC § 469, the term "passive activity loss" is defined as "the amount (if any) by which—(A) the aggregate losses from all passive activities for the taxable year, exceed (B) the aggregate income from all passive activities for such year." *Id.* § 469(d)(1). The Commissioner points out that the somewhat harsh result of applying IRC § 469(a) in a self-charged or wash transaction is tempered by IRC § 469(b), which provides that "any loss or credit from an activity which is disallowed under subsection (a) shall be treated as a deduction or credit allocable to such activity in the next taxable year." *Id.* § 469(b).

The Hillmans do not dispute, nor could they, that straightforward application of the plain language of IRC § 469(a) prohibits them from deducting the management fee expenses of the Passthrough Entities for taxable years 1993 and 1994 from their related management fee income for those same respective years.[5] However, the Hillmans take the position that the plain language of IRC § 469(a) should not so apply. The Hillmans' position is based upon their argument that, when IRC § 469(l)(2) is read together with certain portions of IRC § 469's legislative history, it is clear that Congress directed the Secretary of the Treasury (the Secretary) to issue a regulation excepting self-charged management fees resulting in no accretion of the taxpayer's actual wealth from operation of IRC § 469(a), and the Secretary's failure to comply with this direction does not prevent them from avoiding operation of IRC § 469(a). The Tax Court's reasoning in

[5]Indeed, the Hillmans do not dispute that under a straightforward application of the plain language of IRC § 469, the management fee expenses at issue are passive activity losses and the related management fee income at issue resulted from nonpassive activity.

support of its ruling in favor of the Hillmans essentially tracks this argument made by the Hillmans.

IRC § 469(l)(2), relied upon by the Hillmans, provides that the Secretary "shall prescribe such regulations as may be necessary or appropriate to carry out provisions of [IRC § 469], including regulations— . . . which provide that certain items of gross income will not be taken into account in determining income or loss from any activity (and the treatment of expenses allocable to such income) . . . ." 26 U.S.C. § 469(l)(2). The following excerpt from the House Conference Report for the Tax Reform Act of 1986 is the legislative history of IRC § 469 upon which the Hillmans rely:

> Self-charged interest.—A further issue with respect to portfolio income arises where an individual receives interest income on debt of a passthrough entity in which he owns an interest. Under certain circumstances, the interest may essentially be "self-charged," and thus lack economic significance. For example, assume that a taxpayer charges $100 of interest on a loan to an S corporation in which he is the sole shareholder. In form, the transaction could be viewed as giving rise to offsetting payments of interest income and passthrough interest expense, although in economic substance the taxpayer has paid the interest to himself.

> Under these circumstances, it is not appropriate to treat the transaction as giving rise both to portfolio interest income and to passive interest expense. Rather, to the extent that a taxpayer receives interest income with respect to a loan to a passthrough entity in which he has an ownership interest, such income should be allowed to offset the interest expense passed through to the taxpayer from the activity for the same taxable year.

> * * *

> The conferees anticipate that Treasury regulations will be issued to provide for the above result. Such regulations may also, to the extent appropriate, identify other situations in which netting of the kind described above is appropriate

with respect to a payment to a taxpayer by an entity in which he has an ownership interest. Such netting should not, however, permit any passive deductions to offset non-passive income except to the extent of the taxpayer's allocable share of the specific payment at issue.

H.R. Conf. Rep. No. 99-841, at II-146-47 (1986). The Secretary has promulgated no permanent regulations exempting self-charged items of income and expenses from operation of IRC § 469(a), and has only issued one proposed regulation in this regard. That proposed regulation deals *only* with the self-charged interest situation specifically discussed in the just quoted legislative history of IRC § 469 and the reverse of that situation (*i.e.*, when a passthrough entity loans money to its owner). Prop. Treas. Reg. § 1.469-7, 56 Fed. Reg. 14,034 (April 5, 1991).

We hold IRC § 469(a) prohibits the Hillmans from legally deducting their passive management fee expenses from their related nonpassive management fee income for purposes of lowering their taxable income for taxable years 1993 and 1994. The threshold problem with the Hillmans' position is that nothing in the plain language of IRC § 469 suggests that an exception to IRC § 469(a)'s general prohibition against a taxpayer's deducting passive activity losses from nonpassive activity gains exists where, as in the present case, the taxpayer essentially paid a management fee to himself. The general rule is that unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language (the Plain Meaning Rule). *Caminetti v. United States*, 242 U.S. 470, 485 (1917) ("[T]he rules which are to aid doubtful meanings need no discussion" when the statutory language is clear and unambiguous.); *United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir. 1988) ("[W]hen the terms of a statute are clear, its language is conclusive and courts are not free to replace that clear language with an unenacted legislative intent." (internal quotation marks and alteration marks omitted)).

The Hillmans' argument calling for us to ignore the plain language of IRC § 469(a) implicates two extremely narrow exceptions to the Plain Meaning Rule. The first exception applies when literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent to

the contrary. *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000). The second exception implicated by the Hillmans' argument applies when literal application of the statutory language at issue "results in an outcome that can truly be characterized as absurd, *i.e.*, that is so gross as to shock the general moral or common sense . . . ." *Id.* (internal quotation marks omitted). If either of these exceptions apply, "then we can look beyond an unambiguous statute and consult legislative history to divine its meaning." *Id.* Again, the instances in which either of these exceptions to the Plain Meaning Rule apply "are, and should be, exceptionally rare." *Id.*

When considering the applicability in the case before us of the first described exception to the Plain Meaning Rule, we must consider whether clearly expressed congressional intent exists to the effect that taxpayers such as the Hillmans are exempt from operation of IRC § 469(a) in a self-charged or wash transaction involving passive management fee expense and related nonpassive management fee income. Unfortunately for the Hillmans, no such clearly expressed congressional intent exists. First, no statutory language, including the statutory language of IRC § 469(l)(2), is of help to the Hillmans in this regard. Second, the legislative history of IRC § 469 does not clearly express the congressional intent the Hillmans need in order to prevail on their argument. Indeed, the only situation the legislative history of IRC § 469 specifies that deserves exception from operation of IRC § 469(a) is one involving self-charged interest. H.R. Conf. Rep. No. 99-841, at II-146 (1986). Moreover, the legislative history further states, without qualification, that the Secretary has discretion to identify other situations in which offsetting otherwise prohibited under IRC § 469(a) will be allowed. H.R. Conf. Rep. No. 99-841, at II-146-47 (1986). Without clearly expressed congressional intent, contrary to the result produced by literally applying the plain language of IRC § 469(a) to the factual situation presented in this case, the Hillmans cannot avail themselves of the first described exception to the Plain Meaning Rule.

The Hillmans also cannot avail themselves of the second described exception to the Plain Meaning Rule—that literal application of the statutory language at issue produces an absurd result. Literal application of the plain language of IRC § 469(a) to the factual situation before us does not produce a result that is so gross as to shock our

general moral or common sense. In this regard, we point out that the somewhat harsh result created by literally applying IRC § 469(a) to the wash transaction at issue here is considerably tempered by the fact that IRC § 469(b) allows the Hillmans to carry forward the passive management fee expenses for taxable years 1993 and 1994 to subsequent taxable years as deductions allocable to the activity of the Pass-through Entities for those next years. We do note, however, that we see no reason why the factual situation before is not deserving of exemption from operation of IRC § 469(a) as proposed by the Secretary with regard to an interest payment in a self-charged transaction, *see* Prop. Treas. Reg. § 1.469-7, 56 F.R. 14,034 (April 5, 1991). But, this is an inequity in the United States Tax Code that only Congress or the Secretary (as the holder of delegated authority from Congress) has the authority to ameliorate.

In summary, we hold that IRC § 469(a) prohibits the Hillmans from legally deducting their passive management fee expenses from their related nonpassive management fee income for purposes of lowering their taxable income for taxable years 1993 and 1994.

Judge Wilkins and Judge Williams join in this part of the opinion.

WILLIAMS, Circuit Judge:

## III.

Accordingly, we reverse the decision of the Tax Court and remand for the Tax Court to consider the alternative argument raised below by the Hillmans.[6]

(Text continued on page 11)

---

[6]The Tax Court specifically declined to address the Hillmans' alternative argument:

> Because of our conclusion that petitioners are entitled to self-charged treatment with respect to the management fees, we find it unnecessary to address their alternative argument that the partnerships properly reported two activities to petitioner (or to the upper tier partnerships or S Corporations).

*Hillman v. Commissioner*, 114 T.C. 103, 115 n.9 (2000).

If, as the dissent suggests, the Hillmans had failed to raise a substantive legal argument in their briefs and, instead, waited to raise it until oral argument, I might agree that the argument is waived. Instead, however, the issue is one of relief — whether the Hillmans have lost the opportunity to have the district court address the argument that was specifically preserved by the Tax Court when it ruled in their favor on one of the bases they presented at trial.

Federal Rule of Appellate Procedure 28(a)(10) requires that the *appellant's* brief contain "a short conclusion stating the precise relief sought." Rule 28(b) requires the appellee's brief to "conform to the requirements of Rule 28(a)(1)-(9) and (11)" but patently omits the requirement that the appellee's brief conform with Rule 28(a)(10). Charles Alan Wright et al., *Federal Practice and Procedure* § 3974.2 (1999) ("[A]ppellate Rule 28(b) provides that it shall conform to the requirements of paragraphs (1) to (9) and (11) of Rule 28(a) for the brief of the appellant . . . . The one conspicuous omission from the listing in Rule 28(b) . . . is the paragraph that requires an appellant's brief to contain a short conclusion stating the precise relief sought." (internal quotation marks omitted)). Therefore, it was the Commissioner's burden and not the Hillmans' to request the appropriate relief. As a result, the Hillmans should not now be penalized for that which they were not required to do in the first instance.

Moreover, the dissent conflates the Hillmans' failure to request relief with failure to raise a substantive legal argument. As the dissent notes, this Court normally considers *arguments* not raised in the appellant's opening brief to be waived. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999) ("Federal Rule of Appellate Procedure 28(a)(9)(A) requires that the argument section of an appellant's opening brief must contain the appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies. . . . Failure to comply with the specific dictates of this rule with respect to a particular claim triggers abandonment of that claim on appeal." (internal citations and quotation marks omitted)). Likewise, Rule 28(b) requires Rule 28(a)(9) compliance by appellees at the risk of abandonment of an argument. Here, however, the Hillmans did not fail to raise a substantive legal argument; instead, at oral argument, the Hillmans informed this Court of the appropriate relief should their argument on the merits fail. Specifically, the Hillmans asked that the case be remanded for resolution of an argument raised before the Tax Court upon which the Tax Court had reserved ruling. The Hillmans' request for alter-

Judge Wilkins joins in this part of the opinion.

*REVERSED AND REMANDED*

HAMILTON, Senior Circuit Judge, dissenting in part:

Remand of this case in order for the Tax Court to address the Hillmans' alternative argument is inappropriate. Accordingly, I dissent from Part III of the court's opinion.

Federal Rule of Appellate Procedure 28(b) provides, *inter alia*, that an appellee's brief must conform to the requirements of Federal Rule of Appellate Procedure 28(a)(5) and (a)(9)(A). Thus, an appellee's brief must contain a statement of all issues presented for review, Fed. R. App. P. 28(a)(5), and argument with respect to each of those issues consisting of the appellee's "contentions and the reasons for them, with citations to the authorities and parts of the record on which" the appellee relies, Fed. R. App. P. 28(a)(9)(A). This court has previously deemed a claim abandoned on appeal where the appellant failed to comply with Federal Rule of Appellate Procedure 28(a)(9)(A) with respect to that claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999). This result only makes sense, given that without negative consequences to a party's failure to comply with Federal Rule of Appellate Procedure 28, the requirements of the rule would be hollow.

---

native relief does not constitute a substantive legal argument. Further, granting the Hillmans' request for a remand does not countenance "sandbagging" this Court or the Commissioner. Neither does it require this Court or the Commissioner to consider complex legal issues requiring detailed analysis without proper notice. Accordingly, we conclude that the Hillmans' failure to specify in their briefs the alternative relief they desired does not prevent us from granting such relief. *Cf. Hernandez v. Starbuck*, 69 F.3d 1089, 1093 (10th Cir. 1995) ("Because the appellant comes to the court of appeals as the challenger, he bears the burden of demonstrating the alleged error and the precise relief sought . . . . Though Fed. R. App. P. 28(b) requires the appellee's brief to contain arguments addressing the issues raised by the appellant, we have never characterized the appellee's obligation in terms of a categorical imperative.").

Here, the Hillmans, as appellees, did not include their alternative argument in the "Issues Presented" section of their appellate brief; nor did they address the argument in the "Argument" section of their appellate brief. Rather, they merely requested, *for the first time at oral argument*, that in the event the panel rejected the legal basis upon which the Tax Court ruled in their favor, the panel remand the case for the Tax Court to consider their alternative argument that they made below, but which the Tax Court expressly did not reach. Under Federal Rule of Appellate Procedure 28(b) and *Edwards*, 178 F.3d at 241 n.6, such a belated request is insufficient to preserve the Hillmans' alternative argument for appellate review, and, *a fortiori*, remand. As for the substantive legal argument/relief distinction made by the majority, common sense dictates that if the Hillmans waived their right to have this court consider their alternative argument on appeal, they have also waived their right to have the district court now, following resolution of the appeal, consider it in the first instance.

For these reasons, I would reverse the Tax Court's decision without honoring the Hillmans' unpreserved request for a remand.