**In re TWA INC. POST CONFIRMATION ESTATE, Debtors.**

**TWA Inc. Post Confirmation Estate, Plaintiff,**

v.

**City and County of San Francisco Airports Commission, Defendant.**

Bankruptcy No. 01–0056(PJW).

Adversary No. 02–07136(PJW).

United States Bankruptcy Court, D. Delaware.

Jan. 20, 2004.

William D. Sullivan, Charles J. Brown, III, Elzufon, Austin, Reardon, Tarlov & Mondell, P.A., Wilmington, DE, Douglas W. Jessop, Jessop & Company, P.C., Denver, CO, for the City and County of San Francisco on behalf of its Airport Commission.

Thomas E. Dutton, Laurie M. Thornton, William F. Hurley, Kirkland & Ellis, Chicago, IL, Laura Davis Jones, James E. O'Neill, Michael P. Migliore, Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C., Wilmington, DE, Co–Counsel for the Estate–Plaintiff.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the motion to dismiss (Doc. # 4) filed by the defendant City and County of San Francisco on behalf of its Airport Commission ("San Francisco"). By its complaint, the TWA Inc. Post Confirmation Estate ("TWA") seeks to recover alleged preferential transfers. For the reasons set forth below, the Court will deny San Francisco's motion.

## BACKGROUND

San Francisco owns and operates an airport system, including facilities at the San Francisco International Airport. Trans World Airlines, Inc. ("the Debtor") had scheduled flights in and out of the San

Francisco International Airport. During the ninety days before it filed for bankruptcy the Debtor made payments to San Francisco totaling $1,332,834.16. These payments covered such matters as terminal and gates rent, utilities, security service, parking, and landing and takeoff rights.

On January 10, 2001 the Debtor and twenty-six of its subsidiaries filed voluntary petitions for relief in this Court under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").[1] On March 12, 2001, the Court approved the sale to American Airlines, Inc. of substantially all of the Debtors' assets. The Debtors' liquidation plan was confirmed on June 14, 2002 and all rights and assets of the Debtors not theretofore sold to American Airlines, Inc. were transferred to TWA. Furthermore, the plan explicitly reserved to the plan administrator the right to settle claims as well as pursue all claims the estate may have under the Bankruptcy Code, including avoidance actions under §§ 547 and 550.

San Francisco filed an administrative claim on June 19, 2001 for $8,735,516.85 (Claim No. 613100) and a second administrative claim on January 7, 2002 in the amount of $89,296,821.00 (Claim No. 970200). On August 24, 2002 TWA filed an objection to both of San Francisco's claims. San Francisco's claims were reduced and reclassified and on November 1, 2002 the two parties entered into a Stipulation and Agreed Order (the "Stipulation"), which was approved by the Court. As a result of the Stipulation, Claim No. 613100 was deemed an allowed administrative expense claim in the amount of $92,166.00 and an allowed prepetition unsecured claim of $8,642,752.62; Claim No. 970200 was deemed an allowed administrative expense claim in the amount of $1,209,000.00 and an allowed prepetition unsecured claim of $13,094,167.80. Shortly thereafter the plan administrator paid San Francisco $92,721.65 and $3,270.81 for each of the allowed administrative expense claims.

A month prior to the Stipulation, on October 4, 2002, TWA sent a letter to San Francisco demanding the return of $1,332,834.16, for alleged preferential payments made during the ninety days prior to the bankruptcy filing. San Francisco did not respond to TWA's October 4, 2002 demand letter. On December 18, 2002 TWA initiated an adversary proceeding pursuant to §§ 547(b)[2] and 550 to avoid and recover the transfers. San Francisco subsequently filed the instant motion to dismiss. According to San Francisco, "[b]ecause San Francisco has had its prepetition claims allowed and no avoidance

---

1. Individual sections of the Bankruptcy Code will be cited herein as "§ ___".

2. Section 547(b) provides:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>> (1) to or for the benefit of a creditor;
>> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>> (3) made while the debtor was insolvent;
>> (4) made—
>>> (A) on or within 90 days before the date of the filing of the petition; or
>>> (B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>> (5) that enables such creditor to receive more than such creditor would receive if—
>>> (A) the case were a case under chapter 7 of this title;
>>> (B) the transfer had not been made; and
>>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (1993).

action was brought as part of the Estate's objections to claims, San Francisco is entitled to an order dismissing the Complaint for failure to state a claim upon which relief may be granted..." (Doc. # 4, p. 4)

## DISCUSSION

Under Fed.R.Civ.P. 12(b)(6), a defendant can move to dismiss a complaint on the ground that the complaint fails to state a claim upon which relief may be granted. This Rule is made applicable to adversary proceedings in a bankruptcy proceeding pursuant to Rule 7012(b).[3] A motion to dismiss "should be granted 'if it appears to a certainty that no relief could be granted under any set of facts which could be proved.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("[A] complaint should not be dismissed ... unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). In reaching that decision the court is " 'required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.' " *Hechinger Inv. Co. v. M.G.H. Home Improvement (In re Hechinger Inv. Co.)*, 288 B.R. 398, 400 (Bankr.D.Del.2003) (citing *Morse*, 132 F.3d at 906).

### A. Section 502(d)

■ In support of its motion to dismiss, San Francisco relies on § 502(d),[4] which

"requires disallowance of a claim of a transferee of a voidable transfer *in toto* if the transferee has not paid the amount or turned over the property received as required under the sections under which the transferee's liability arises." *Collier on Bankruptcy* ¶ 502.05[1] (15th ed. rev.2003) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 354 (1977), U.S.Code Cong. & Admin.News 1977, pp. 5963, 6309). San Francisco argues that § 502(d) precludes the avoidance action by TWA because their claims were approved by this Court in the Stipulation and the preference action was not raised at that time. San Francisco relies upon *LaRoche Industries, Inc. v. General American Transportation Corp. (In re LaRoche Indus., Inc.)*, 284 B.R. 406 (Bankr.D.Del.2002) (Akard, J.), where the court granted a defendant's summary judgment motion on facts similar to those here.

In *LaRoche*, the creditor filed a claim and the debtors objected. The claim was subsequently allowed by court order. *Id.* at 407–08. After the allowance, the debtors commenced an adversary proceeding against the creditor to recover alleged preferential transfers. *Id.* at 408. In reliance on what it viewed as the plain meaning of § 502(d) and its legislative history, the court concluded:

Thus, § 502(d) stands for the proposition that if a claim is allowed there is no longer a voidable transfer due from that claimant. In essence, a voidable transfer, such as a preference, must be determined, as part of the claims process and

---

**3.** Rule 7012(b) states "Rule 12(b)–(h) F.R. Civ. P. applies in adversary proceedings." Fed. R. Bankr.P. 7012(b).

**4.** Section 502(d) states:
Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or

553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

not at a later time, especially after distribution under the plan has been made. *Id.* at 408–09.

Also, citing *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), the court found that *"Katchen* instructs that the Debtors in this case should have brought the preference action before, or at the same time as, they filed their objection to GATX' claim. Having failed to do so, they cannot now bring the preference action." *Id.* at 409. The court also raised an issue of fairness, whereby a contrary interpretation of § 502(d) would allow a debtor to object to a claim while concealing a preference cause of action. *Id.* at 410.

Although "creditor surprise" was not an issue, in *Caliolo v. Azdel (In re Cambridge Indus. Holdings Inc.),* No. 00–1919, 02–03293, 2003 WL 21697190 (Bankr.D.Del. July 18, 2003) (King, J.), relying on the holding in *LaRoche,* the court found that a "preference dispute must be resolved in tandem with the claim objection," *id.* at *5, and granted defendant's summary judgment motion. Unlike *LaRoche,* in *Cambridge* the preference action was commenced before the claim objection was filed; however, the claim dispute was resolved and the claim was allowed in a reduced amount. *Id.* at *3. Nevertheless, the court found that:

> Joinder of all disputes concerning the entitlements of a creditor into a single proceeding should expedite, not delay, the administration of bankruptcy cases. Combining claims objections and transfer avoidance spares all parties the inconvenience of awaiting the outcome of two proceedings in order to know a creditor's net claim against, or indebtedness to, the bankruptcy estate. If creditors are to be subjected to new or continuing preference litigation after their claims have been allowed, § 502(d) will have no substance.

*Id.* at *3.

There is a split of authority on the interpretation and application of § 502(d). The courts in *Peltz v. Gulfcoast Workstation Group (In re Bridge Info. Sys., Inc.),* 293 B.R. 479 (Bankr.E.D.Mo.2003), and *Rhythms NetConnections, Inc. v. Cisco Systems, Inc. (In re Rhythms NetConnections),* 300 B.R. 404 (Bankr.S.D.N.Y.2003), rejected the *LaRoche* holding and reached the contrary conclusion that a preference action was not prohibited under § 502(d) if a debtor files such an action after a claim was allowed by settlement or a hearing.

In *Bridge,* the creditor filed a claim for $1,052,574.88 and alleged that $713,677.88 was secured. The debtor objected, arguing that the creditor was not entitled to a setoff. *Id.* at 482. The court permitted the creditor to turn the claim into an adversarial proceeding seeking a declaratory judgment and the case was ultimately settled, although a settlement agreement was never approved by the court. *Id.* Shortly thereafter, the plan administrator filed a preference action to avoid $2,117,476.10 of payments made to the creditor. *Id.* The creditor filed a motion to dismiss the preference action on a number of grounds, including the alleged preclusive effect of § 502(d) since the plan administrator did not raise the preference action at the time he objected to the claim. *Id.* at 482–83. The court rejected *LaRoche* and *Cambridge,* finding that those decisions had a misplaced reliance on *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), which applied § 57(g) of the Bankruptcy Act, the predecessor to § 502(d) of the Bankruptcy Code. *Id.* at 488. "The issue of whether a debtor who fails to object to a creditor's claim based on § 502(d) is precluded from later asserting a preference action against the creditor

was simply not at issue in *Katchen.*" *Id.* at 488. The court instead found that § 502(d) was an affirmative defense to a creditor's claim against the estate and "is only applicable when the debtor in possession actually interposes an objection to a claim under § 502(d)." *Id.* "Therefore, if the debtor in possession does not assert an objection to a creditor's claim under § 502(d), that section is simply not at issue and does not bar a subsequent preference action against the creditor." *Id.* (citing *Cohen v. TIC Fin. Sys. (In re Ampace Corp.),* 279 B.R. 145, 162–63 (Bankr.D.Del. 2002)).

In *Rhythms,* the court agreed with *Bridge* and found that § 502(d) did not preclude the preference action following a claim resolution. 300 B.R. at 409. In *Rhythms,* the defendant opposed the sale of the debtor's assets and filed a claim for damages. *Id.* at 407. The debtor and the defendant eventually reached a settlement that was approved by the court, which included an administrative expense claim for $5,810,000 and a general unsecured claim of $25,000,000. *Id.* After the close of the asset sale, the debtors commenced an adversary proceeding to recover alleged preferential transfers. *Id.* at 407–08. The court rejected the defendant's argument that the preference action was precluded by § 502(d) because of the settlement order. *Id.* at 408. The court instead pointed out that the purpose of § 502(d) was to "coerce creditors to comply with judicial orders." [5] *Id.* at 409. The *Rhythms* court agreed with the decision in *Bridge* that § 502(d) was intended to be used as an affirmative defense by the debtor in possession who asserts an objection to a creditor's claim. *Id.* Furthermore, the court pointed out that the parties entered into

the settlement at a time when the debtors "were struggling with, among other things, an urgent sale of assets" and thus were not focusing on any preference issues. *Id.* The following observations by the court are worth noting because the situation there is similar to the one here:

> The Debtors and their statutory Creditors' Committee were in triage and were far from a point where they could be expected to have commenced a preference analysis or a claims review. Instead, in connection with the approval of the Asset Sale, the Debtors had to negotiate settlements with, other than Cisco, GATX Corp. and certain incumbent local exchange carriers in order to resolve issues relating to the Asset Sale and to fix claims of those entities. Without fixing the pre-petition cure amounts owed to those parties, the Asset Sale could not have effectively proceeded.

> \*　　\*　　\*　　\*　　\*　　\*

> The Debtors were nowhere near commencing preference analyses or the claims objection process when the Settlement Order was agreed upon. Moreover, there is no requirement that preference claims be brought as compulsory counterclaims, even to a proof of claim.

*Id.* at 409–10.

■ I am persuaded that *Rhythms* and *Bridge* state a better application of § 502(d) and that section should not be used to prohibit a preference action that is commenced after a claim is allowed by settlement or a hearing. The facts in *Rhythms* show why giving § 502(d) the preclusive effect argued for by San Francisco could be detrimental to the chapter 11 process. I would add the following

---

5. The court explained that it "merely 'preclude[s] entities which have received voidable transfers from sharing in the distribution of the assets of the estate unless and until the voidable transfer has been returned to the estate.'" *Rhythms,* 300 B.R. at 409 (quoting *In re Mid Atl. Fund, Inc.,* 60 B.R. 604, 609 (Bankr.S.D.N.Y.1986)).

observations regarding preference actions in large chapter 11 cases.

I have experienced a number of large chapter 11 cases where the plan confirmation process turned on the resolution of a number of large claims. This dictates the need for a claims resolution process occurring long before any preference analysis is undertaken. Indeed, the instant chapter 11 case is such a situation. When the Debtors filed their Chapter 11 petition they had already executed an asset sale agreement with American Airlines, Inc. and were recording negative cash flows at an alarming rate. That sale transaction was consummated within several months of the filing of the petition. For an extended period following the sale transaction, the Debtors and the creditors' committee addressed and resolved a large number of very large claims, including many administrative expense claims, asserted against the estate. Indeed, for a number of months following the sale transaction it was not possible to conclude that the Debtors were administratively solvent. These resolutions were essential to moving forward with a plan of liquidation. And I believe it was an appropriate course of action to resolve those claims prior to undertaking a preference analysis. The preference analysis was undertaken late in the case and over 500 preference actions were filed just short of the second anniversary of the filing of the petition.

In most chapter cases where a reorganization is effected, the debtor does not file preference actions because of the need for ongoing working relationship with vendors and other creditors. In that stage of the case leading up to such a reorganization, the debtor effects settlements and otherwise resolves major claims with its credi-

tors. Indeed, if the reorganization prospects look good, it may be a waste of estate resources to undertake a preference analysis while the estate is engaged in the claims resolution process. However, if it turns out that a successful reorganization cannot be effected and the debtor and major creditors conclude that a liquidation is the best alternative, then preference actions most assuredly will be brought, and indeed should be brought, and I believe that the *LaRoche* holding would hinder that process.

In liquidation cases, the job of pursuing preference actions is often given to a plan administrator and the preference analysis is not done until after or close to plan confirmation. In those situations, the preference analysis is often not even undertaken by the debtor and its professionals. But typically, the debtor and its professionals are actively involved in the claims resolution process because of their institutional knowledge of the debtor's affairs, but the preference actions are not filed until late in the case, often on the eve of the § 546 two-year statute of limitations.

Finally, in large chapter 11 cases sophisticated creditors typically are well aware of prospects and risks of preference litigation. In this chapter 11 case when the petition was filed creditors knew that it was a liquidation case that would very likely result in preference actions. Thus, it seems unlikely that creditors could be surprised or caught off guard when such preference complaints are finally filed.

### B. New Value

█ San Francisco also argues that the preference action is defeated because it conveyed new value to the Debtor in accordance with § 547(c)(4).[6] Pursuant to

---

6. Section 547(c)(4) provides:

(c) The trustee may not avoid under this section a transfer—

§ 547(g) "the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c)."

 *New York City Shoes. Inc. v. Bentley International,* 880 F.2d 679, 680 (3d Cir.1989), set forth three requirements under § 547(c)(4) for a transfer to be excepted: (1) the transfer must be otherwise voidable as a preference under § 547(b); (2) "new value" must be advanced after the preferential transfer and it must be unsecured; and (3) the creditor must not have been fully compensated by the debtor as of the date the creditor filed the bankruptcy petition. If the creditor satisfies these elements, a setoff is permitted in the amount of the new value and the recoverable amount is reduced. *See Ross v. Phila. Housing Auth. (In re Ross)*, No. 97–0063, 1997 WL 331830, at *5 (Bankr.E.D.Pa. June 10, 1997) (citing *N.Y. City Shoes,* 880 F.2d at 680).

San Francisco argues that it conveyed new value and that the amount of new value conveyed was greater than the preference amount, resulting in a setoff favoring San Francisco. It relies on an affidavit of a senior property manager, which sets forth a spreadsheet detailing numerous invoices which purport to show advances of new value. However, San Francisco's motion papers, including the affidavit, present no meaningful analysis of the information which would satisfy its burden of proof as to new value. This information, even if viewed in the context of a summary judgment motion, is insufficient.

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

## CONCLUSION

For the reasons set forth above, San Francisco's motion to dismiss is denied.

## ORDER

For the reasons set forth in the Court's Memorandum Opinion of this date, defendant City and County of San Francisco Airports Commission's motion to dismiss the complaint (Doc. # 4), is **DENIED**.

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

11 U.S.C. § 547(c)(4).