**In re DORNIER AVIATION (NORTH AMERICA), INC., Debtor.**

**H. Jason Gold, in his capacity as Trustee for the Dana Liquidating Trust, Appellant,**

v.

**Barry Eccleston, Appellee.**

**In re Dornier Aviation (North America), Inc., Debtor.**

**H. Jason Gold, in his capacity as Trustee for the Dana Liquidating Trust, Appellant,**

v.

**Louis Harrington, Appellee.**

**Nos. 1:04CV1192LMB, 1:04CV1193LMB.**

United States District Court, E.D. Virginia, Alexandria Division.

Feb. 22, 2005.

Valerie Perrin Morrison, Wiley Rein & Fielding LLP, McLean, VA, for Plaintiff.

Warren R. Stein, Leesburg, VA, for Defendant.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

The trustee in the underlying bankruptcy proceeding has appealed the bankruptcy court's decision to grant summary judgment in favor of appellees Barry Eccleston and Louis Harrington, two former executives of the debtor. In so deciding, the bankruptcy court disallowed the trustee's avoidance actions against Eccleston and Harrington.[1] Appellant is H. Jason Gold, in his capacity as trustee for the DANA Liquidating Trust, which resulted from the bankruptcy of the debtor, Dornier Aviation (North America), Inc. ("DANA").[2] Appellant seeks a reversal of the bankruptcy court's grants of summary judgment and a remand requiring the bankruptcy court to allow the trustee's avoidance actions to

---

**1.** "Avoidance action" refers to an action brought by the trustee under the Bankruptcy Code to recover money or property that the debtor paid to a party within 90 days—or within one year if the party was an "insider"—before the bankruptcy petition was filed. Because appellant seeks the return of pre-petition preference payments, the avoidance actions may also be termed "avoidance of preference," or simply "preference," actions. 11 U.S.C. §§ 547–550.

The Code provides for these actions to ensure that all creditors in a given class share equally in the available assets of a debtor by mandating the return of additional payments that individual members may have received. Appellees do not dispute that these actions would have been proper if brought before or simultaneously with the adjudication of appellees' claims.

**2.** DANA was in the airplane maintenance and repair business.

proceed.[3] In the alternative, appellant seeks a remand for an evidentiary hearing on disputed factual issues that he contends were critical to the bankruptcy court's ruling.

Both appeals focus on the legal issue of whether § 502(d) of the Bankruptcy Code bars a debtor from filing an avoidance action against a creditor following the allowance of the creditor's disputed claim.[4] Neither the Fourth Circuit nor this Court has opined on this issue, and the handful of bankruptcy courts that have considered it have disagreed.

Because the essential issue on appeal involves questions of law, this Court's review is de novo. In re Johnson, 960 F.2d 396, 399 (4th Cir.1992). However, if any questions of disputed fact are found to be relevant to the disposition of this appeal, the bankruptcy court's findings may be overturned only if clearly erroneous. Id. For the reasons discussed below, the decisions of the bankruptcy court will be reversed, and these cases will be remanded for adjudication of the avoidance actions.

## I.

On May 20, 2002, several of DANA's creditors filed an involuntary Chapter 7 petition. On the same day, the bankruptcy court converted the case to Chapter 11; however DANA was unable to reorganize. As such, on February 14, 2003, the bankruptcy court confirmed DANA's Liquidation Plan, effective February 25, 2003. Also effective on that date, all assets of DANA were transferred to a new entity, the DANA Liquidating Trust ("DLT"). Under the Plan, claim objections had to be filed within 120 days of February 25, 2003. The DLT, however, was authorized to pursue claims and assert its rights against other parties under §§ 542–553 of the Bankruptcy Code, which allows a trustee two years to file avoidance actions. See 11 U.S.C. § 546(a)(1)(A).

Appellees are former executives of DANA, against whom appellant seeks to recover preferential, post-petition and/or fraudulent transfers based on payments the executives received during their final year of employment.[5] Both executives' employment agreements provided two years of severance if the employee was terminated without cause, as both were in April 2002 as a result of the bankruptcy. After their termination, each appellee filed a proof of claim, seeking payment from the DLT in the amount of the compensation to which each claimed he was entitled under his employment agreement.[6] The DLT

3. Appellant argues in the alternative that the amounts paid to the executives are recoverable as fraudulent conveyances for which the debtor did not receive equivalent value. This distinction is irrelevant, however, to the issue on appeal—whether the trustee may now bring actions against appellees under any legal theory in an attempt to recover these sums.

4. Because both appeals involve the exact same legal issues, the parties have agreed to have the two appeals resolved together.

5. Appellee Eccleston was Executive Vice President for Business Development, and appellee Harrington was Chief Executive Officer.

6. Eccleston, whose base salary was $400,000, claimed $1,276,516, and Harrington, whose base salary was $750,000, claimed $1,359,972. Eccleston's claim included severance, health insurance benefits, pension protection and compensation for being terminated without 90 days' notice. Harrington's claim included severance, tax preparation fees and equalization benefits, health and life insurance benefits, relocation expenses and compensation for being terminated without 90 days' notice.

In the preference actions; the trustee sought to recover $114,738 from Eccleston and $215,106 from Harrington for bonus and travel reimbursements that the debtor had paid to them within a year of the bankruptcy

objected that these claims exceeded the Bankruptcy Code's limitation of claims for employment termination to the equivalent of one year's future compensation. *See* § 502(b)(7). On November 11, 2003, the parties settled these claims with respect to all but one issue and signed settlement agreements.[7] The remaining issue involved whether appellees were entitled to an additional 90 days' notice of termination. This issue was litigated unsuccessfully by appellees.[8] Following the settlements and litigation, and after the DLT had made an initial payment to appellees, on April 23, 2004, the trustee filed complaints against Eccleston and Harrington seeking to recover as avoidable transfers bonuses and travel expenses paid to the executives during the year preceding DANA's bankruptcy. As noted above, these monies were not part of the payments at issue in the settlements.

Eccleston and Harrington responded by filing for summary judgment on the ground that the trustee was barred from taking this action by his agreement to settle their claims. The bankruptcy court agreed and held that the trustee was foreclosed from proceeding further against the appellees by his agreement to settle their claims and by the final adjudication of the

one remaining issue. The bankruptcy court based its decision on its conclusion that § 502(d) bars a trustee from prosecuting an avoidance action against a party with whom the trustee has previously settled or adjudicated a claim. The bankruptcy court supported its conclusion by referring to the language of the statute and by invoking principles of fairness and finality. The court also cited concerns for judicial economy and the value of resolving all related issues at one time.[9]

## II.

■ These appeals focus on the meaning and intent of § 502(d) of the Bankruptcy Code—an issue that has split the few courts that have considered it. Section 502(d) provides:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under [other sections of this title] or that is a transferee of a transfer avoidable under [other sections of this title], unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable [under the other sections of this title].

---

petition being filed. These payments did not overlap with any payments at issue in the executives' claims.

7. Each executive also signed a Waiver and Release Agreement that stated: "[Y]ou and DLT agree that this Agreement represents the full and complete agreement concerning your separation from employment with DANA, and constitutes full payment of all obligations, including those under your Employment Agreement dated October 12, 2000." Appellees argued to the bankruptcy court that this was a mutual release that barred the DLT's avoidance actions. In part because the context of the entire document reveals a focus on the former employees' agreement not to sue the DLT, the court found that the waiver was not mutual and did not bar the DLT's complaint.

This Court finds that decision fully supported by the explicit language of the Waiver and Release Agreement.

The possibility of future avoidance actions was not addressed during the above proceedings or in the settlement agreements.

8. Harrington appealed that ruling unsuccessfully; Eccleston did not appeal.

9. In their Motions for Summary Judgment, appellees also argued that appellant's avoidance actions were barred by *res judicata* and collateral estoppel. Although the bankruptcy court did not address these doctrines directly in its ruling, the concepts behind them appear to have informed the court's discussion of fundamental fairness and judicial economy.

The parties do not dispute that § 502 authorizes a bankruptcy judge to disallow a creditor's claim when that creditor is in the possession of, and refuses to return, assets or property owed to the debtor. What the parties dispute is whether this section acts only as an affirmative defense available to debtors or may also be used by creditors, like the appellees, whose claims already have been allowed by settlement, litigation or inaction by the trustee, to defeat later avoidance actions. In essence, appellees argue that by settling the adversary proceedings, the trustee agreed that they did not owe the debtor any money or other assets, an interpretation that would by definition bar subsequent avoidance actions.

The trustee argues that the plain language of § 502(d) does not create a means for creditors to object to avoidance actions and that as such, the statute operates only as an affirmative defense for debtors contesting creditors' claims. Appellant cites to several courts that have endorsed this view. For example, in *In re AmeriServe Food Distrib., Inc.,* the court held that "Section 502 addresses the allowability of a creditor's proof of claim where the creditor has received a voidable transfer, not the debtor's ability to commence a preference action where the debtor fails to object to the creditor's claim." 315 B.R. 24, 34 (Bankr.D.Del.2004); *see also In re TWA, Inc. Post Confirmation Estate,* 305 B.R. 221, 226 (Bankr.D.Del.2004)(holding that § 502(d) "should not be used to prohibit a preference claim that is commenced after a claim is allowed by settlement or hearing"); *In re Bridge Info. Sys., Inc.,* 293 B.R. 479, 488–89 (Bankr.E.D.Mo.2003)(holding that § 502(d) is not even an issue unless raised by the debtor as a defense); *In re Rhythms Net-Connections, Inc.,* 300 B.R. 404, 408–09 (Bankr.S.D.N.Y.2003) (same). In all of these cases, the initial allowance of a credi-

tor's claim was not treated as a determination that the creditor could not later owe money to the debtor for past preference payments. In reaching this conclusion, these courts found a debtor's assertion of § 502(d) to be permissive, not mandatory, in disputing creditors' claims. *See, e.g., AmeriServe,* 315 B.R. at 34–35. Thus, the courts limited the provision to a tool for debtors to coerce creditors to comply with judicial orders to return property. *See Rhythms,* 300 B.R. at 409 (citing *Bridge,* 293 B.R. at 488).

In further support of this position, the trustee argues, and a number of courts agree, that based on its plain language, § 502(d) applies only when a fixed amount of adjudicated preference liability remains unpaid—not when an avoidance action has not yet been litigated, as is the case here. *See, e.g., Rhythms,* 300 B.R. at 409 ("[Section 502(d) is] designed to be triggered after a creditor has been afforded a reasonable time in which to turn over *amounts adjudicated* to belong to the bankruptcy estate.") (citations omitted) (emphasis added); *In re Atl. Computer Sys., Inc.,* 173 B.R. 858, 862 (S.D.N.Y.1994) ("Once the liability of the transferee has been determined, the claim interposed by the transferee will be disallowed unless such transferee gives effect to the judgment flowing from the exercise of the avoiding powers.") (quoting 3 Collier on Bankruptcy ¶ 502.04 (15th Ed.1993)). Pointing to the statute's directive that courts "shall" disallow a creditor's claim when that creditor holds a transfer that "*is* recoverable" or for which a transferee "*is* liable," (emphasis added) the trustee maintains that this provision cannot pertain to indeterminate amounts for which a claimant might, or might not, be found liable through litigation of an avoidance action. Appellant asserts that if Congress had wanted this statute to apply to conditional

liabilities, it would have used conditional language, as it did in other sections of the Bankruptcy Code. As written, he argues, the provision is unambiguous, meaning that a court must end its analysis with the statutory language. *See In re Sunterra Corp.*, 361 F.3d 257, 265 (4th Cir.2004).

Appellees cite cases, which the bankruptcy court chose to follow in his summary judgment rulings, that support the opposite view, holding that an objection based on § 502(d) is waived by a debtor if not raised during the adjudication of a claim to which the debtor has objected.[10] *See LaRoche Indus. v. Gen. Am. Transp. Corp.*, 284 B.R. 406, 408–09 (Bankr.D.Del.2002)(holding that if a claim has been allowed, there can no longer be an avoidable preference transfer due from that claimant); *In re Cambridge Indus. Holdings*, 2003 WL 21697190, *5 (Bankr. D.Del. July 18, 2003) (same). Underlying these holdings is the view that because § 502(d) does not allow a creditor's claim, even partially, if the creditor owes the debtor for a voidable transfer, by definition a debtor that allows a creditor's claim is acknowledging that the creditor owes the debtor nothing. As such, these courts concluded that any avoidance action must be determined as part of the resolution of a creditor's claim. *See, e.g., LaRoche*, 284 B.R. at 409–10. Appellees also note that Fed. R. Bankr.P. 3002(c)(3) gives a creditor from whom a preference has been re-

covered time to amend his claim to include the amount disgorged as a preference and suggest that this supports their view that a creditor's claim cannot be fully determined until preference matters have been resolved—and therefore, conversely, that the final resolution of a claim bars further litigation of preference actions.[11] *See Id.* at 409.

Finally, the parties and the courts dispute the relevance of *Katchen v. Landy*, in which the United States Supreme Court held that a bankruptcy referee had summary jurisdiction to rule on an avoidance action without a jury trial when the trustee objected to the transferee's claim.[12] *See* 382 U.S. 323, 340, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). Appellant and the courts on whose opinions he relies contend that the case is irrelevant to the application of § 502(d) to avoidance actions filed after claims have been settled because that issue simply was not before or addressed by the Court. *See, e.g., Bridge*, 293 B.R. at 488 (finding *Katchen* inapplicable because the "Court's analysis center[ed] on the relationship between a preference and the claims allowance process when the trustee advances an objection under § 502(d)," not whether that section precludes a preference against a creditor whose claim has been allowed). Appellees and the cases they cite concede that *Katchen* did not involve the instant issue but assert that

---

10. Appellees attempt to distinguish *Bridge* as holding simply that avoidance actions can be filed after claims have been settled in principle if there has been no final order or judgment. However, the court in *Bridge* opined that the same analysis logically should apply even in the event of a final settlement or judgment order. *See* 293 B.R. at 488.

11. Rule 3002(c)(3) provides:
An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the

judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property. If the judgment imposes a liability which is not satisfied, or a duty which is not performed within such period or such further time as the court may permit, the claim shall be allowed.

12. *Katchen* was decided under § 57(g) of the Bankruptcy Act, which is analogous to § 502(d) in the current Bankruptcy Code. *Bridge*, 293 B.R. at 488.

the case stands for the proposition that the bankruptcy laws are designed to secure prompt and efficient administration and settlement of all claims in one proceeding.[13] *See* 382 U.S. at 327–28, 86 S.Ct. 467.

■ The Court finds that the authority cited by the trustee articulates a better-reasoned interpretation of the plain meaning of § 502(d). When a statute is unambiguous on its face, the Court may not read into its language unstated or implied meaning. *See, e.g., Hillman v. IRS*, 263 F.3d 338, 342 (4th Cir.2001). Section 502(d) clearly provides a mechanism for debtors to disallow creditors' claims when those creditors owe money or other assets to the debtor. Nowhere does the plain language of the statute provide or even suggest a corollary right of creditors to dispute avoidance actions on the basis of previously settled claims. Accordingly, the Court interprets the language of § 502(d) to describe only an affirmative defense for debtors to creditors' claims, not a means by which creditors can escape avoidance actions that are filed by debtors after the creditors' claims have been settled or litigated.

### III.

■ This conclusion is supported not only by the statutory text but also, as the trustee argues, by the doctrine that a statute should be construed in a common sense fashion consistent with its intended purpose. *See First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 869 (4th Cir.1989). Such construction of this statute requires consideration of the practical realities of bankruptcy proceedings. In this vein, the trustee points out that although the Plan-imposed deadline for creditors to file claims was 120 days, the statute of limitations applicable to filing avoidance actions is two years. *See* 11 U.S.C. § 546(a)(1)(A). Accordingly, to construe § 502(d) as requiring debtors to bring avoidance actions simultaneously with the adjudication of creditors' claims would eviscerate Congress's determination that trustees should have two years in which to file such actions. The trustee further argues that requiring avoidance actions to be filed at the same time as objections to creditors' claims would have "delayed payments to creditors, made execution of the Plan very difficult [and] when applied retroactively, as the lower court did, would [have] deprive[d] the DLT of valuable assets that would otherwise benefit the creditors [and] ... would also have disenfranchised a substantial number of the creditors from participating in the reorganization[14] and voting[15] on the Plan." Ap-

---

**13.** Appellees also argue that the sections of the Bankruptcy Code and Rules that require a trustee to object to the allowance of any improper claims provide further support for their argument that avoidance actions must be part and parcel of any claim resolution process.

**14.** The parties dispute whether the DLT was engaged in a liquidation or a reorganization, which at least one court has held to be a factor in determining whether debtors should be allowed to bring preference actions after claims have been resolved. *See TWA*, 305 B.R. at 227 (noting that in cases where reorganization looks promising, a debtor might not undertake preference analysis during the claims resolution process, but if it is later determined that reorganization is not possible, the debtor might then decide to file avoidance actions). The bankruptcy court deemed the issue irrelevant to this action because the DLT appeared to be in a liquidation, not a potential reorganization, a factual finding with which the trustee disagrees. This Court does not need to resolve this issue.

**15.** The trustee explains that under the lower court's ruling, claimants who had received potentially voidable transfers would not receive standing as "creditors" entitled to vote on a proposed bankruptcy plan until their

pellant also contends that the other option, litigating all objections to claims and avoidance actions before approval of a liquidation plan, would substantially increase the cost and complexity of the process, jeopardize a debtor's emergence from bankruptcy and make less money available to all creditors in the end. Finally, the trustee asserts that these "absurd" results are not necessary to provide due process to claimants under the statute because potential creditors must be put on notice of any bankruptcy plan, which in this instance preserved the DLT's right to file avoidance actions at a later date.[16] *See* DANA Proposed Liquidation Plan § 10.1 (approved by court order on February 14, 2003).

Appellees do not, and would be hard-pressed to, object to injecting common sense into the analysis, given their emphasis on fundamental fairness. Instead, they attempt to distinguish on the facts the cases in which courts found that to disallow avoidance actions initiated after claims had been settled would unreasonably burden the bankruptcy process. For example, appellees quote the judge in *Rhythms* as relying on the debtors' disarray, which rendered them "far from a point where they could have been expected to have

commenced a preference analysis or a claims review." *See* 300 B.R. at 409; *see also TWA*, 305 B.R. at 226–27 (noting that when reorganization is even a possibility, the need for a debtor to maintain ongoing relationships with vendors and creditors counsels against requiring the debtor to file preference actions during the claims resolution process).[17] Appellees suggest that the DLT faced no such chaos. They allege that the DLT was set up to liquidate, not reorganize, DANA and that although the DLT filed more than 100 avoidance of preference actions just before the two-year statute of limitations expired, all of them were virtually identical and thus required little analysis, and only six were against former employees. At the same time, appellees suggest that organizational problems provide no excuse for not taking timely action.

This Court finds persuasive appellant's arguments regarding the impact of disallowing avoidance actions after creditors' claims have been settled on the overall bankruptcy administration process, and especially on other creditors' rights. The bankruptcy court below appears to have focused its concerns primarily on the interests of the two appellees at hand, without equal consideration of the intertwined

transfers were adjudicated as non-preferential, which could disenfranchise them until the termination of the two-year statute of limitations for bringing avoidance actions.

16. Appellees do not dispute that they had notice of the Plan.

Section 10.1 of the Proposed Liquidation Plan, which as noted above, was approved by an order of the United States Bankruptcy Court for the Eastern District of Virginia on February 14, 2003, reads:

*Avoidance Actions Preserved.*—The DANA Liquidating Trustee shall have exclusive standing to prosecute any Avoidance Action for the benefit of the DANA Liquidating Trust. The proceeds of such Avoidance Actions will be paid to the DANA Liquidating

Fund for Distribution in accordance with the Plan. The DANA Liquidating Trustee shall have the sole authority to settle and compromise any Avoidance Action without entry of an Order by the Bankruptcy Court of compliance with the requirements of Federal Rule of Bankruptcy Procedures 9019. The entry of a Confirmation Order shall not have a preclusive or *res judicata* effect on any Avoidance Action, filed or unfiled.

17. Appellees note that the bankruptcy court in this action faulted the *TWA* court for basing its analysis in part on the debtors' attempts at reorganization when the corporation actually had confirmed a liquidation plan.

rights of other individual creditors whose interests could be affected by disallowing the trustee's avoidance actions. The bankruptcy laws were designed to provide for both orderly procedures and an equitable distribution of a debtor's assets. A reading of § 502(d) that forces a debtor to choose between (1) disrupting the orderly and careful processing of creditors' claims and its own avoidance actions and (2) protecting all creditors' rights would not effectuate Congress's intent as expressed in the Bankruptcy Code. Therefore, the Court also finds that the realities of bankruptcy administration and the potential detrimental effect on other creditors mandate against barring avoidance actions against creditors whose claims have been settled or adjudicated.

■ Lastly, in addition to his statutory arguments, the trustee asserts that the bankruptcy court erred in basing its opinion largely on concerns of fundamental fairness. The trustee points out that fairness is not identified in the Bankruptcy Code as a basis for disallowing preference actions. Moreover, § 105 of the Code, which concerns the bankruptcy court's equitable powers, does not allow a court to create new substantive rights. *See Official Comm. Of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir.1987) ("While the equitable powers emanating from § 105(a) are quite important in the general bankruptcy scheme[,] ... these equitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules."); *see also In re Stokes*, 198 B.R. 168, 175 (E.D.Va.1996)("Section 105(a) does not 'authorize the bankruptcy court to create substantive rights that are otherwise unavailable under applicable law, [nor does it] constitute a roving commission to do equity.' ")(quoting *U.S. v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986) (citations omitted)).

■ Even assuming that fundamental fairness is an appropriate consideration, the trustee argues that fairness tips in favor of allowing the avoidance actions to proceed, for the same reasons stated above regarding the rights of all of the creditors to receive an equitable distribution from the debtor's assets. Appellant reiterates that to require the trustee to file all avoidance actions within the 120–day period for claim objections would run counter to Congress's allowance of two years for the filing of such actions. Appellant also reasserts that requiring avoidance actions to be adjudicated at the same time at which claim objections are resolved would increase the cost, complexities and delays of bankruptcy proceedings and would hinder potential creditors' participation in the process. Finally, in response to appellees' individual fairness concerns, the trustee again notes that appellees were on notice of the debtor's Plan, which expressly reserved the right to file avoidance actions at a later date, and contends that this notice negates any issue of "unfair surprise." *See* DANA Proposed Liquidation Plan § 10.1 (approved by court order on February 14, 2003).

Appellees essentially restate the bankruptcy court's findings in their favor, which sound in theories of finality, efficiency and estoppel. That court found that to allow the DLT to bring avoidance actions now would be tantamount to impermissible "claim-splitting" and that good faith required the trustee to raise the § 502(d) issue along with his other objections to the creditors claims. Appellees assert that the bankruptcy court properly exercised its discretion under § 105, which provides that "[n]o provision of this title ... shall be construed to prevent the court from, *sua sponte*, taking any action or making

any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent abuse of process." In addition to allowing a debtor too many bites at the apple, appellees maintain that allowing multiple hearings on related matters wastes judicial resources, which they claim flies in the face of both general efficiency and the principles underlying the bankruptcy laws. They also recast the fairness issue as a balancing of statutory rights, not the improper creation of new rights.[18]

From an individual perspective, appellees argue that it is unfair to creditors not to have all matters concerning their claims resolved at once, arguing that a debtor should not be allowed to "sandbag" its creditors by objecting to a claim, settling for a reduced amount and then bringing its own action for an avoidable preference. *See, In re Cambridge Indus. Holdings, Inc.*, 2003 WL 1818177, at *2 (Bankr. D.Del. Apr. 2, 2003)(citing *LaRoche*, 284 B.R. at 410). Similarly, they maintain that a creditor might choose to pursue his claim differently, such as by contesting an objection that he otherwise would have accepted, if he was aware that the debtor

planned to file a preference claim against him. Finally, appellees counter the trustee's argument that the two-year statute of limitations for avoidance actions means that debtors should not be required to object on that ground within the 120–day period for filing claim objections, reasoning that such a ruling would hold creditors' claims hostage for up to two years and would grant the debtor an unwarranted extension of the objection period.

Although this record would have been clearer, and any fairness concerns avoided, if the trustee had stated explicitly in the settlements that he was not waiving his right to bring subsequent avoidance actions, the overall equities nevertheless favor the appellant in this case. The appellees still have the chance in litigating the avoidance actions to prevail or resolve their disputes by additional settlements. To affirm the bankruptcy court on its interpretation of § 502 would undermine the meaning of the statute and limit the debtor's statutory right to have two years in which to bring avoidance actions. Moreover, it would render an unjust result to other creditors.[19]

---

**18.** Appellees claim that statutory rights govern the filing of a claim, the claim itself and the process for asserting any objections. Appellees also attempt to refocus the issue from the broader question of § 502(d)'s application to all post-claim avoidance actions to how it should apply on the specific facts of their cases. In doing so, they emphasize the bankruptcy court's reliance on fundamental fairness and downplay the importance of § 502(d) to the summary judgment rulings.

However, although the bankruptcy court did emphasize fairness considerations in its opinion, it also expressly adopted the positions of those courts that have interpreted § 502(d) to preclude an avoidance action filed against a creditor after that creditor's own claim has been objected to and finalized.

Appellees note as an aside that § 502(j) would have allowed the trustee to ask the Court to "reconsider" the adjudicated claims

based on new information regarding the preference actions and seem to fault appellant for not pursuing that route instead. However, appellees also acknowledge that appellant likely would not have been able to demonstrate the equities required under that provision for reconsideration. Interestingly, appellant cites the same provision to support his argument that the statute is designed to allow avoidance actions to proceed after creditors' claims have been adjudicated when justice so requires.

**19.** Although the amounts of money sought by the debtor in the avoidance actions against appellees is not large, multiplied by numerous creditors, even such moderate figures could result in a significant sum of assets being denied the debtor—and thus the debtor's other creditors.

*ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

ORDERED that the decisions of the bankruptcy court are reversed, and these two avoidance actions are remanded to the bankruptcy court for adjudication.

The Clerk is directed to forward copies of this Order and the accompanying Memorandum Opinion to counsel of record.